UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BERNISHA LINWOOD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LINDSAY ANDERSON and )<br>IH MISSISSIPPI VALLEY CREDIT UNION, )<br>)<br>Defendants. ) | Case No. 1:20-cv-01347-SLD-JEH |

ORDER

Before the Court are Defendant Lindsay Anderson's Motion for Summary Judgment, ECF No. 8, and Defendant IH Mississippi Valley Credit Union's ("IHMVCU") Motion for Summary Judgment, ECF No. 9. For the following reasons, the motions are GRANTED.

BACKGROUND[1]

Plaintiff Bernisha Linwood entered into a contract (the "Contract") with Mike Murphy Ford to purchase a motor vehicle on June 1, 2018. Mike Murphy Ford assigned the loan to IHMVCU that same day. Anderson is an employee of IHMVCU.

Proceeding *pro se*, Plaintiff initiated the current suit on October 9, 2020. Compl., ECF No. 1 at 1–5.[2] The complaint identifies two claims, *id.* at 4, and the affidavit attached to the complaint[3] contains three further discernable claims, Compl. Aff. 2–3, ECF No. 1 at 6–8. In the

---

[1] At summary judgment, a court must examine the evidence in the light most favorable to the nonmovant. *Bowyer v. U.S. Dep't of Air Force*, 804 F.2d 428, 430 (7th Cir. 1986). Unless otherwise indicated, the facts have been drawn from Defendants' statements of undisputed material facts, Anderson Mot. Summ. J. 1–2; IHMVCU Mot. Summ. J. 1, Plaintiff's recitation of additional facts in the affidavits comprising her response to Defendants' motions, Pl. Resp. Mot. Summ. J. 1–6, ECF No. 15, Defendants' replies to Plaintiff's additional facts, Anderson Reply 2–8, ECF No. 16; IHMVCU Reply 2–8, ECF No. 17, and exhibits to the filings. The Court notes that the first affidavit in Plaintiff's response appears to be materially identical to the affidavit attached to her complaint.
[2] The Court has federal question jurisdiction over this case. *See* Compl. 3.
[3] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

1

first count of the complaint, Plaintiff alleges that Defendants[4] violated 15 U.S.C. §§ 1692–1692p, known as the Fair Debt Collection Practices Act ("FDCPA"), by "saying Plaintiff owed a debt and misrepresentation of amount owed." Compl. 4. In the second count of the complaint, Plaintiff claims that Defendants "violated 15 U.S.C. [§] 1601 because proper disclosure of a finance charge was not given." *Id.*[5] This statute is part of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f. In the affidavit attached to her complaint, in addition to restating the claims listed above, Plaintiff further alleges that Defendants have not provided her with the refund she is owed from the consumer credit transaction under 15 U.S.C. § 1615(a)(1), Compl. Aff. 2, and that Defendants violated 15 U.S.C. § 1632(a) by not disclosing the terms "annual percentage rate" and "finance charge" in a conspicuous enough manner, *id*. at 3, and suggests that Defendants violated 15 U.S.C. § 1605(a), possibly by failing to disclose "how [they] came up with the finance charge," *id*. at 2–3. *See also* Compl. 3 (listing the entire FDCPA, 15 U.S.C. § 1601, 15 U.S.C. § 1605(a), 15 U.S.C. § 1615a(1), and 15 U.S.C. § 1632(a) as statutes at issue in this case).[6] Plaintiff requests damages for the FDCPA violations, Compl. Aff. 3, and seeks further relief in the form of court assistance in determining the amounts owed to her by Defendants, namely, a refund of any unearned portion of interest, Compl. 4. She asserts that the

---

[4] Plaintiff at times refers only to a singular Defendant, but where the identity of the individual Defendant is not specified and context does not dictate otherwise, the Court assumes Plaintiff intends to refer to both Defendants.
[5] After labeling Defendants' alleged violations of the FDCPA and the TILA with the numbers (1) and (2), Plaintiff includes a number (3), which asserts that "Plaintiff sent three aff[i]davit[s] and never receive[d] a response." Compl. 4. Assuming that the referenced affidavits are the same as the one attached to the complaint, they also concerned the alleged violations of the FDCPA and the TILA. *See* Compl. Aff. 1–3. Although included in the same list as her two claims for relief, the Court interprets statement number (3) as a factual statement providing context for her allegations rather than a separate claim for relief, as the Court cannot discern a legal issue connected to the alleged failure of Defendants to respond to Plaintiff's affidavits. *See Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982) (stating that "while a district court has the obligation to insure that a pro se litigant is given fair and meaningful consideration of all claims presented," it need not "decide the unraised issues [of law] which [are] subsidiary to the claims actually presented"); *Kiebala v. Boris*, 928 F.3d 680, 684–85 (7th Cir. 2019) ("District courts are not charged with seeking out legal issues lurking within the confines of the *pro se* litigant's pleadings . . . ." (quotation marks omitted)).
[6] Plaintiff also alleges that Defendants are subject to criminal liability for willful and knowing violations of the TILA, 15 U.S.C. § 1611. Compl. Aff. 2. As this is a civil case, this allegation is not relevant.

amount of damages equals "[$]25,627 plus whatever is owed back from [the] consumer credit transaction." *Id*.

Defendants now move separately for summary judgment on all claims. Anderson Mot. Summ. J. 4; IHMVCU Mot. Summ. J. 5.

## DISCUSSION

### I.     Legal Standard

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the movant has properly moved for summary judgment, the nonmovant must "respond . . . by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The nonmovant "waives any arguments that were not raised in its response to the moving party's motion for summary judgment," *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014), and should the nonmovant fail to respond to any fact listed by the movant, this "will be deemed an admission of the fact," CDIL-LR 7.1(D)(2)(b)(6).

At summary judgment, the evidence is viewed in a light most favorable to the nonmovant, and all reasonable inferences are drawn in favor of the party opposing the motion. *Bowyer v. U.S. Dep't of Air Force*, 804 F.2d 428, 430 (7th Cir. 1986). Parties may not merely refer to their own pleadings, *Celotex*, 477 U.S. at 324, but must instead "cit[e] to particular parts of materials in the record, including depositions, documents, [and] . . . affidavits or declarations" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute,"

Fed. R. Civ. P. 56(c)(1).[7]  An issue is suited for trial when the factual dispute would require a jury to resolve the parties' differing versions of the truth.  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).

The moving party is "entitled to a judgment as a matter of law" when the nonmovant has failed to put forth sufficient evidence to satisfy the essential elements of her case as to which she has the burden of proof.  *Celotex*, 477 U.S. at 323 (quotation marks omitted).  In other words, if the nonmovant fails to make a showing of fact sufficient to establish an essential element of her case, summary judgment will be issued against her.  *Id.* at 322–23.

## II.     Analysis

Both Defendants argue that they are entitled to summary judgment on the FDCPA claim because the FDCPA applies only to third party debt collectors, which neither party is.  Anderson Mot. Summ. J. 2–3; IHMVCU Mot. Summ. J. 2–3.  Anderson contends that summary judgment should be granted in her favor on the TILA claims because, as she is not a creditor of Plaintiff, the TILA does not apply to her.  Anderson Mot. Summ. J. 4.  And IHMVCU asserts that summary judgment is warranted on the TILA claims against it because there is no genuine dispute of material fact as to whether it violated any of the identified provisions.  IHMVCU Mot. Summ. J. 3–5.  The Court will first address the FDCPA claim.[8]

---

[7] "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

[8] It appears from Plaintiff's response to Defendants' motions for summary judgment that she wishes to bring additional claims against Defendants.  First, she notes that Rule 17a-8 of the Securities Exchange Act of 1934 requires every registered broker or dealer to comply with certain reporting and recordkeeping requirements, and she accordingly requests ledger accounts receivable and payable, the original contract with a wet ink signal, and reports and records showing the source of funds.  Pl. Resp. Mot. Summ. J. 4.  Second, she asserts that she "is the maker and drawer and is entitled to recoupment" pursuant to 810 ILCS 5/3-305 and states that the "Bank [S]ecrecy [A]ct requires banks to maintain records showing the source of funds."  *Id.* at 6.  Because Plaintiff did not bring any of these claims or requests in her initial complaint, she has waived them.  *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (quotation marks omitted)).

4

### a. FDCPA Claim

The FDCPA is intended to prevent debt collectors from "making false or misleading representations and from engaging in various abusive and unfair practices," *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); as such, it "regulates only the conduct of debt collectors," *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009) (quotation marks omitted). That term is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Creditors, whose actions are not regulated by the FDCPA, are defined by the act as "any person who offers or extends credit creating a debt or to whom a debt is owed," although the term "does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id*. § 1692a(4); *see also Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("In other words, the [FDCPA] treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not."). Officers or employees of a creditor who, "in the name of the creditor, collect[] debts for such creditor," are not considered debt collectors under the FDCPA. 15 U.S.C. § 1692a(6)(A).

Whether Defendants' actions are regulated by the FDCPA, then, turns on the roles played by Defendants in this credit transaction. It is undisputed that the motor vehicle loan was originated by Mike Murphy Ford on June 1, 2018, and that the loan was assigned to IHMVCU that very same day. *See* Contract 1–2, Anderson Mot. Summ. J. Ex. A, IHMVCU Mot. Summ. J. Ex. A, ECF No. 11. At that point, as Plaintiff's debt was now owed to IHMVCU, IHMVCU

became Plaintiff's creditor.[9]  *See* 15 U.S.C. § 1692a(4).  There is no evidence before the Court that Plaintiff's debt was in default at the time IHMVCU acquired it—indeed, as the assignment took place the same day as the origination, this is highly unlikely.  *See* Contract 2.  IHMVCU should thus be treated as a creditor under the FDCPA, and any claim brought against it under the FDCPA cannot proceed.

Likewise, the evidence does not show that Anderson can be held liable under the FDCPA.  The act clearly states that an employee of a creditor engaging in debt collection activities on behalf of that creditor is not a debt collector, s*ee* 15 U.S.C. § 1692a(6)(A), although an employee may be considered a debt collector under the FDCPA if he does not act in the name of the creditor but instead uses his own name, *Smith v. Short Term Loans, LLC*, No. 99 C 1288, 2001 WL 127303, at *5 (N.D. Ill. Feb. 14, 2001).  It is not disputed that Anderson was an employee of Plaintiff's creditor, and there is no evidence before the Court that she engaged in debt collection activities outside of her employment with IHMVCU[10]—in Plaintiff's response to the motions for summary judgment, every mention of Anderson is accompanied by her status as "an agent of [IHMVCU]," Pl. Resp. Mot. Summ. J. 1–2.  Without any evidence that Anderson acted as a debt collector, the Court cannot allow the FDCPA claims against her to proceed.

Accordingly, both Defendants are entitled to summary judgment on Plaintiff's FDCPA claim.

---

[9] Plaintiff asserts in her response to Defendants' motions for summary judgment that "Defendants did not loan any money or issue any credit to the plaintiff." Pl. Resp. Mot. Summ. J. 6.  As discussed above, this is irrelevant as to whether Defendants are creditors under the FDCPA—an assignee is considered a creditor unless it acquired a "debt in default solely for the purpose of facilitating collection of such debt for another." *See* 15 U.S.C. § 1692a(4).
[10] In her declaration, Anderson states that she "do[es] not engage in any debt collection activities outside of [her] employment with IHMVCU."  Anderson Decl. ¶ 2, ECF No. 8-1.  However, because Anderson's electronic signature does not comply with Local Rule 11.4(A)(2), the Court will not rely on it when evaluating Anderson's motion.  *See* 28 U.S.C. § 1746 (providing that a declaration must contain a signature to constitute admissible evidence); *see also Howell v. Wexford Health Source Inc.*, Case No. 3:16-cv-160-RJD, 2019 WL 4058994, at *1 (S.D. Ill. Aug. 28, 2019) (stating that the court did not consider a declaration at summary judgment because the signature page was missing).

### b. TILA Claims

The purpose of the TILA is to protect consumers against unfair credit practices and to ensure the meaningful and accurate disclosure of credit terms. *See* 15 U.S.C. § 1601 (stating that an additional purpose of the TILA is to ensure the meaningful disclosure of the terms of leases of personal property). Where credit transactions are involved, the TILA regulates only the actions of creditors, *Short Term Loans*, 2001 WL 127303, at *5, a term which is defined as

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). "[A]ny civil action for a violation of [the TILA] . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary." *Id*. § 1641(a); *see Lippner v. Deutsche Bank. Nat'l Tr. Co.*, 544 F. Supp. 2d 695, 704–05 (N.D. Ill. 2008) ("[A]n assignee is subject to the same liability as the original creditor when the underlying TILA violation is apparent on its face.").

Plaintiff alleges in her complaint that Defendants violated several provisions of the TILA: they violated 15 U.S.C. § 1601 by not properly disclosing the finance charge, Compl. 2; they violated 15 U.S.C. § 1605(a), likely by failing to disclose how they "came up with the finance charge," Compl. Aff. 2, 3; they violated 15 U.S.C. § 1615(a)(1) by failing to provide her with the refund she is owed from the consumer credit transaction, *id*. at 2; and they violated 15 U.S.C. § 1632(a) by failing to disclose the terms "annual percentage rate" and "finance charge" in a conspicuous enough manner, *id*. at 3. Both Defendants ask the Court to grant summary

7

judgment in their favor on the TILA claims. Anderson Mot. Summ. J. 4; IHMVCU Mot. Summ. J. 3–5.

### i. Anderson

The TILA claims against Anderson may be disposed of quickly: there is no evidence before the Court that Anderson was either a creditor or an assignee of Plaintiff's loan, as required to be held liable for violations of the TILA. *See Short Term Loans*, 2001 WL 127303, at *5; *Lippner*, 544 F. Supp. 2d at 704–05; *see also Celotex*, 477 U.S. at 325 (stating that a movant's burden at summary judgment may be satisfied by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case"). As such, no claim brought against Anderson pursuant to the TILA may proceed. Anderson is entitled to summary judgment on all TILA claims.

### ii. IHMVCU

As the assignee of Plaintiff's motor vehicle loan, IHMVCU does not argue that the TILA does not apply to it. IHMVCU Mot. Summ. J. 3–5.[11] IHMVCU believes that it is entitled to summary judgment on the TILA claims because there is no genuine dispute of fact as to whether it violated any of the TILA provisions cited by Plaintiff. IHMVCU Mot. Summ. J. 3–5. The Court will address each provision referenced by Plaintiff individually, although some of Plaintiff's claims may apply to more than one.

#### 1. 15 U.S.C. § 1601

Plaintiff cites 15 U.S.C. § 1601 in her allegation that "proper disclosure of a finance charge was not given." Compl. 4. 15 U.S.C. § 1601 establishes the Congressional findings and

---

[11] Because any TILA deficiencies alleged to be contained in the Contract would have been disclosed on its face, and other allegations involve activities directly undertaken by IHMVCU, *see* Compl. 4; Compl. Aff. 2–3, IHMVCU does not fall within the TILA exclusion for assignees as provided in 15 U.S.C. § 1641(a).

the purpose of the TILA; it does not set forth any rules which creditors must obey or failures for which they may be held liable.[12] As IHMVCU argues, *see* IHMVCU Mot. Summ. J. 3, it is entitled to summary judgment on the claim brought under this provision.

### 2.   15 U.S.C. § 1605(a)

15 U.S.C. § 1605(a) provides that, for any consumer credit transaction, "the amount of the finance charge . . . shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." Finance charges do not include "charges of a type payable in a comparable cash transaction" and "shall not include fees and amounts imposed by third party closing agents . . . if the creditor does not require the imposition of the charges or the services provided and does not retain the charges." *Id*. The provision lists several types of charges which may be included in the finance charge, such as interest, a service or carrying charge, or a fee for an investigation or credit report. *Id*.

Plaintiff asserts that 15 U.S.C. § 1605(a) is at issue in this case, *see* Compl. 3; Compl. Aff. 2, but it is not immediately apparent what her claimed grievance is. She later states in the affidavit attached to her complaint that "how [IHMVCU] came up with the finance charge was never disclosed by any agent," Compl. Aff. 3, which could refer to this provision. Regardless, IHMVCU has provided evidence showing that the only finance charge charged to Plaintiff under the Contract was interest, *see* Jorgensen Aff. ¶ 4, ECF No. 9-1, which the TILA permits, *see* 15 U.S.C. § 1605(a)(1). And Plaintiff has provided no evidence to show that any other charges were included in the finance charge. As no genuine dispute of fact exists as to whether

---

[12] It is possible that in referencing this provision, the first of the TILA, Plaintiff simply meant to cite the entire act. In the interest of completeness, the Court addresses this provision separately; the claim that "proper disclosure of a finance charge was not given," Compl. 4, will also be addressed in the section on 15 U.S.C. § 1632(a). *See infra* Section II(b)(ii)(4).

IHMVCU included any improper charges in the finance charge, it is entitled to summary judgment on any such claim.

### 3. 15 U.S.C. § 1615(a)(1)

15 U.S.C. § 1615(a)(1) provides that "[i]f a consumer prepays in full the financed amount under any consumer credit transaction, the creditor shall promptly refund any unearned portion of the interest charge to the consumer." Plaintiff claims she has not received a refund of any unearned interest and is seeking such a refund. Compl. Aff. 2; Compl. 4. While Defendants do not dispute that Plaintiff has not been issued a refund, IHMVCU Reply 3, ECF No. 17, it provides evidence that "Plaintiff has not prepaid in whole or in part the financed amount under the Contract," Jorgensen Aff. ¶ 5. As such, Plaintiff is not entitled to any refund. *See* IHMVCU Mot. Summ. J. 4. Plaintiff does not directly dispute this, nor does she present any evidence demonstrating she paid in full or in part. Therefore, the Court grants summary judgment in favor of IHMVCU on the claim seeking a refund of interest.

### 4. 15 U.S.C. § 1632(a)

15 U.S.C. § 1632(a) requires that the finance charge (as defined by 15 U.S.C. § 1605(a)) and the annual percentage rate of a loan be disclosed more conspicuously than other terms. Plaintiff contends that because the terms "annual percentage rate" and "finance charge" were not disclosed in a conspicuous enough manner, Defendants violated this provision of the TILA. Compl. Aff. 3.

The relevant document here is the Contract. At the top left of the first page of the Contract is a box with the heading "FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT." Contract 1. Under this heading are multiple boxes, two of which are titled "**FINANCE CHARGE**" and "**ANNUAL PERCENTAGE RATE**" in bold. *Id.* These two

10

boxes are further encased in a bolded outline. *Id.* Numbers within these boxes indicate that there would be an annual percentage rate of 16.70% and a finance charge of $9,978.44. *Id*. This TILA disclosures box mirrors the sample forms for similar transactions provided by the Federal Reserve. *Compare* Credit Sale Model Form, 12 C.F.R. Part 226 app. H-1, *with* Contract 1 (using same TILA box format).

The TILA uses the objective "reasonable person" standard in determining what constitutes "more conspicuous than any other disclosure." *Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d 511, 514–15 (7th Cir. 1999) (declaring that "[w]hat is 'more conspicuous than any other disclosure' depends on the contents of the form, not on how it affects any particular reader"). The Contract is admittedly busy; the first page is packed with small text in varying typefaces, with an "ILLINOIS MOTOR VEHICLE" watermark appearing behind text in the center of the page. *See* Contract 1. However, most of the activity appears outside of the TILA disclosures box and does not interfere with it. *See id.* There has been no "determined effort to embellish the form" such as the use of colored markers to highlight other text, which the Seventh Circuit suggests might diminish the conspicuousness of the finance charge and annual percentage rate disclosures, *Check-N-Go*, 200 F.3d at 516, nor has there been any interference with the disclosures. The finance charge and annual percentage rate disclosures are at the top of the first page of the contract, they are under a heading labelling them as TILA disclosures, they are fully capitalized, the font is bolded, and the outline is thicker than that of the adjacent boxes. *See* Contract 1; *see also Check-N-Go*, 200 F.3d at 516 (finding that the finance charge and annual percentage rate disclosure on a loan agreement using a sample form were "more conspicuous" than the other disclosures, even where a circle had been hand-drawn around the due date disclosure). And the Contract mirrors the format of the sample forms provided by the Federal

Reserve. Thus, this Court finds the finance charge and annual percentage rate are disclosed more conspicuously than the other terms, and IHMVCU is accordingly entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, Defendant Lindsay Anderson's Motion for Summary Judgment, ECF No. 8, and Defendant IH Mississippi Valley Credit Union's Motion for Summary Judgment, ECF No. 9, are GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 10th day of September, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
